JOHN H. PAUL, Respondent, *v.* THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, Appellant.

*Consent, by one of two parties to a contract, to the making by the other party thereto of a contract with a third person — its effect as to a third contract between the latter parties.*

Where an individual makes a contract with a railroad company, by which he agrees to develop a certain branch of its transportation business, and thereafter the president of such company consents to the individual's entering into a similar contract with another railroad company, which latter contract unequivocally contemplates the execution between the parties thereto of an additional contract, such consent operates as a waiver of any objection on the part of the first-mentioned railroad company to the execution of the additional contract with the second railroad company.

APPEAL by the defendant, The Delaware, Lackawanna and West-ern Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 26th day of June, 1901, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 24th day of June, 1901, denying the defendant's motion for a new trial made upon the minutes.

*Hamilton Odell*, for the appellant.

*Augustus Van Wyck* and *Henry Manne*, for the respondent.

WILLARD BARTLETT, J.:

This litigation grows out of a written contract made on July 19, 1886, between Robert E. Westcott and the Delaware, Lackawanna and Western Railroad Company. The plaintiff sues as the assignee of Westcott. By the contract Westcott agreed for a period of ten years to use his best endeavors to build up, develop, increase, facilitate and conduct the business of the transportation of milk over all the lines owned, controlled or leased by the railroad company. Westcott undertook to charge freight at rates not in excess of those charged by competing railroads for similar service; to render to the defendant every month correct statements of all charges collected for milk transportation during the preceding month; and to pay to the defendant eighty per cent thereof, retaining twenty per cent in full compensation for all his services in the business. On the other hand, the defendant, by the express terms of the contract, granted to Westcott the exclusive privilege of transporting milk over its lines so far as it was permitted to do so by law.

On September 30, 1892, the contract was further extended for five years, to July 9, 1901. Under this contract Westcott built 103 creameries along the lines of the defendant's road, and up to the seventh year expended, in erecting creameries and conducting the business, a sum in excess of $200,000. In the year in which the contract was made the defendant carried only 140,300 cans of milk. In 1898 the business under Westcott's administration had increased so that 2,093,000 cans were transported. Creameries were established by Westcott at every point where there was sufficient available territory; that is to say, at any point on the railroad where

there were 300 or 400 cows within a radius of four miles from a station.   Westcott testified that while a creamery would not pay with that number of cows, it was apt to grow to a paying basis from that number.

In July, 1896, Westcott entered into a contract in writing with the New York Central and Hudson River Railroad Company, whereby he agreed to build or cause to be built at his own expense the necessary creameries, and to use his best endeavors to build up, develop, increase, facilitate and conduct the business of transporting milk, cream and buttermilk to Weehawken over all the lines of the West Shore railroad west of Ravena, a station thirteen miles south of Albany.   This contract was made with the approval of Samuel Sloan, the president of the Delaware, Lackawanna and Western Railroad Company, who examined it and assented to it before it was executed.   It contained, among other things, the following provision in the 10th article thereof : " That the party of the first part having offered to make with the party of the second part a contract for the handling of milk traffic from points on the New York Central Railroad proper west of Albany to the City of New York, and the party of the second part having declined to enter into the same, it is agreed that should said party of the second part hereafter, within the term of this contract, determine to develop the milk traffic to New York from that section over its lines east of the Hudson River, it will enter into a similar contract with the party of the first part for the new traffic west of Albany and also make the present contract from points west of Ravena operative by its lines east of the Hudson River via Albany or some other junction."

In July, 1898, Westcott entered into a second contract with the New York Central and Hudson River Railroad Company, such as was contemplated by the foregoing provision in the 10th article of the first contract with that corporation.   By this second contract he agreed, among other things, to build or cause to be built, at his own expense, the necessary creameries and to use his best endeavors to build up, develop, increase, facilitate and conduct the business of transporting milk, cream and buttermilk to the city of New York over all the lines of railroad owned or leased by the New York Central corporation west of Albany.   Westcott did not speak to Mr. Sloan about this second contract, and testified that he regarded

it the same as the other, evidently meaning that it was embraced in the consent which Mr. Sloan gave to the execution of the first contract with the New York Central corporation, the 10th article of which expressly provided for the making of such further agreement.

Under these two contracts with the New York Central and Hudson River Railroad Company, Westcott erected sixteen creameries along the West Shore, and forty other creameries on the New York Central and its branches.

In 1899, Mr. William H. Truesdale, who had succeeded Mr. Sloan in the presidency of the Delaware, Lackawanna and Western Railroad Company, proposed to Westcott to revise his contract with that corporation. This Westcott declined to do, but, at Truesdale's request, he consented to a modification thereof whereby the defendant was allowed to collect the freights from July 1, 1899, instead of Westcott, upon the undertaking of Truesdale that the defendant would account to him monthly and pay over to him his twenty per cent of the collections.

Under this modification the defendant corporation collected in the seven months from July, 1899, to January, 1900, inclusive, an amount, twenty per cent of which, with interest, equals $77,648.02, for which sum the trial court directed the jury to find a verdict in favor of the plaintiff as the assignee of Westcott. From the judgment entered upon this verdict the defendant has appealed.

At the close of the evidence on both sides, each party moved for the direction of a verdict, thus waiving all right to have any question of fact submitted to the jury, and virtually submitting to the determination of the trial judge all questions of fact as well as of law. (Clason v. Baldwin, 152 N. Y. 204.)

Defendant's liability to pay over to Westcott twenty per cent of the freight on milk which it collected after the modification of its contract with him was disputed on the ground that, prior to the time when said moneys became due, Westcott deliberately violated his contract by entering into another contract of a like character with the New York Central and Hudson River Railroad Company, under date of July 1, 1898 (being the second contract with that corporation heretofore mentioned), by which he undertook and agreed to render to the New York Central corporation the very service, skill and efforts which he had promised and pledged to the defendant.

By reason of Mr. Sloan's assent to the first New York Central contract, the defendant was not in a position to question, nor did it question, the propriety of Westcott's action in developing the milk transportation business along the West Shore line west of Ravena, but it confined its objection to the second contract made on July 1, 1898, provided for in the 10th article of the first New York Central contract and relating to lines east of the Hudson river.

It seems to me that there are two valid answers to the contention of the appellant in this respect. In the first place, the 10th article of the first contract between the New York Central corporation and Westcott distinctly and unequivocally contemplated the subsequent making of just such an agreement as was embodied in the second contract; and when Mr. Sloan, as president of the Delaware, Lackawanna and Western Railroad Company, assented to the execution of that first contract by Westcott, his assent must be deemed to have been a waiver of any objection on the part of his company to the making of such second contract in case Westcott should conclude to enter into it.

In the second place, irrespective of this consent, the evidence warranted the trial judge in finding that Westcott did nothing, under either of the New York Central contracts, which worked any injury to the defendant, or lessened the value of its contract with him. There was no such proximity between the creameries established by Westcott on the defendant's lines and the creameries established by Westcott on the New York Central lines as to cause them to interfere with one another so far as the transportation of milk was concerned, and there was no proof that the defendant suffered damage to the extent of a single dollar by reason of Westcott's services to the New York Central corporation.

Upon all the proof in this case, I think that the plaintiff was entitled to the verdict which was directed in his favor, and that the judgment, therefore, should be affirmed.

All concurred.

Judgment and order affirmed, with costs.